IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-92-165-CR




RICKY ALLEN FOSTER,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 



FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT



NO. 0915206, HONORABLE BOB JONES, JUDGE PRESIDING


 




 After the jury found appellant guilty of burglary of a habitation with attempt to
commit and committing sexual assault, Tex. Penal Code Ann. § 30.02 (West 1989), the court
assessed punishment, enhanced by two prior felony convictions, at confinement for forty years. 
Appellant asserts two points of error, contending that the trial court erred: (1) in finding the
evidence sufficient to support the conviction; and (2) in admitting the results of the DNA
evidence. We will overrule appellant's points of error and affirm the judgment of the trial court.

 Before going to bed on the evening of March 24, 1990, the victim opened the
kitchen window and placed a fan in front of the window to circulate air in her apartment. 
Sometime after 5:00 a.m. the next morning, the victim saw "this shadow" approaching her bed. 
Believing the person to be her boyfriend, the victim called his name. A voice responded,
"No--Don't say anything. I know where you live, and I know where you work, and I can get
you." The victim testified that the intruder placed a "pillow over my face" and kept saying "Don't
look at me." Sometimes he got real angry and pushed the pillow real tight--down on my face--I
thought if I was pushing him too far, he was going to kill me." After performing oral sex on the
victim, the intruder placed his penis in her vagina and sexually assaulted her. After the intruder
left, the victim determined that the chain was still across the door, and that the fan that had been
in front of the window was in the middle of the floor. In response to her 911 call, the police
arrived in approximately eight minutes. The victim described her attacker as a "Black male of
thin build, approximately 5' 7" tall, had a clean shaven face"; she said that it was "too dark" to
be more specific about his appearance. She was unable to identify appellant as the person who
assaulted her in a line-up or at trial.

 Upon arrival at the victim's apartment, Austin Police Officers Tracy Frisinger and
Mark Gilcrest found that the screen had been removed from the kitchen window and determined
that this was the place where the offender gained entry to the apartment. After the initial
investigation, Gilcrest drove the victim to Brackenridge Hospital. 

 Sergeant Bill Scallian of the Travis County Sheriff's Department Crime Lab
testified that he compared appellant's known finger and palm prints with prints taken at the crime
scene. Appellant's prints matched a left thumb print on the outside of the window screen, four
palm prints on the window sill and a palm print taken from the end of the kitchen cabinet on the
sink area. Other prints taken from throughout the apartment did not have enough identifiable
"points" to enable Scallian to make a comparison with appellant's prints. The victim testified that
she was a "fanatic" about cleaning her apartment, and that prior to the time in question, she had
recently cleaned the window sill in the kitchen in the process of cleaning the entire apartment. 
Ricky Criserlic, a "latent specialist" with the Austin Police Department, testified that old prints
would be lost if the area was cleaned or wiped.

 Valerie Turner, a D.P.S. "criminalist," testified that she had compared two pubic
hairs removed from the victim's bed with known pubic hair of appellant. Turner explained that
hair comparison is not an exact science, but that she was able to determine that the predominant
pattern of the hairs compared enabled her to conclude that the characteristics of appellant's pubic
hairs were consistent with pubic hairs found in the victim's bed. Swabs taken from the vaginal
area of the victim at Brackenridge Hospital were used in a DNA analysis to make a comparison
with a blood sample taken from appellant to determine if the semen removed from the victim was
left by appellant. Expert testimony showed that appellant was in the 6.4 percent to 8 percent of
the population of his race that could have left the semen found in the victim's body.

 Appellant asserts that the circumstantial evidence was insufficient to support the
conviction because: (1) the victim was unable to identify appellant as the person who attacked
her; (2) fingerprints found at the place of entry were not sufficient to show that appellant
committed the crime; (3) DNA testing does not possess the degree of reliability to establish
appellant's guilt; and (4) the pubic hairs removed from the victim's bed were merely similar to
appellant's. In reviewing the sufficiency of the evidence to support the conviction, we must
determine whether, viewing the evidence in the light most favorable to the conviction, any rational
trier of fact could have found the essential elements of the offense beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307, 319 (1979); Casillos v. State, 733 S.W.2d 158, 160 (Tex.
Crim. App. 1986), appeal dism'd, 484 U.S. 918 (1987). Because this cause was tried after the
effective date of Geesa v. State, 820 S.W.2d 154, 161 (Tex. Crim. App. 1991), we do not utilize
the analytical construct of excluding every reasonable hypothesis in determining the sufficiency
of the evidence.

 Fingerprints alone may be sufficient to establish guilt if the evidence shows that the
prints must have necessarily been made at the time of the offense. See Bowen v. State, 460
S.W.2d 421, 423 (Tex. Crim. App. 1970). Accessibility of the fingerprinted object to the accused
and absence of the accused's prior presence on the premises are factors to be considered. See
Phelps v. State, 594 S.W.2d 434, 436 (Tex. Crim. App. 1980). Evidence of a defendant's
fingerprints on the window screen that the defendant removed to gain entrance to the victim's
apartment has been held sufficient to support a conviction of burglary with intent to commit sexual
assault when there was no other plausible explanation of how the prints were deposited on the
screen. See Koster v. State, 773 S.W.2d 763, 764 (Tex. App.--Beaumont 1989, pet. ref'd). In
the instant cause, the evidence negates appellant's opportunity to have left prints at the victim's
apartment prior to the offense. Appellant had never been to the apartment before and the area
where appellant gained entry had recently been cleaned. In addition, the prints were found at the
place where the offender gained access to the apartment. While the results of the DNA testing
and the comparison of pubic hairs do not identify appellant as the offender, the evidence is
relevant in that it shows that the offender was in a limited class of persons having characteristics
of appellant. See Tex. R. Crim. Evid. 401. Viewing the evidence in the light most favorable to
the conviction, we hold that any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt. Appellant's first point of error is overruled.

 In his second point of error, appellant contends the trial court erred in admitting
evidence of the results of DNA testing because the State failed to prove by clear and convincing
evidence that the DNA evidence was reliable under Rule 702 of the Texas Rules of Criminal
Evidence. The Court of Criminal Appeals has fashioned a two-step procedure in determining the
admissibility of DNA testing. Hicks v. State, 860 S.W.2d 419, 422-23 (Tex. Crim. App. 1993);
Kelly v. State, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992). Pursuant to Rule 702, the
proponent of the scientific evidence must prove by clear and convincing evidence outside the
presence of the jury that the proffered evidence is reliable and relevant. Once determined reliable
and relevant, such evidence is admissible unless the trial court determines its probative value is
outweighed by any of the factors identified in Rule 403 of the Texas Rules of Criminal Evidence. 
Hicks, 860 S.W.2d at 422-23.

 In the instant cause, appellant's complaint is limited to the alleged failure of the
State to prove the reliability of the DNA evidence. Scientific evidence to be shown reliable must
satisfy the following criteria:



(1) the underlying scientific theory is valid;


(2) the technique applying the theory is valid; and


(3) the technique was properly applied on the occasion in question.



Kelly, 824 S.W.2d at 573. Factors that may affect a trial court's determination of reliability
include, but are not limited to, the following:



(1) the extent to which the relevant scientific community accepts the validity of
the underlying scientific theory and technique, if such a community can be
ascertained;


(2) the qualifications of the expert(s) testifying;


(3) the existence of literature supporting or rejecting the underlying scientific
theory and technique;


(4) the potential rate of error of the technique;


(5) the availability of other experts to test and evaluate the technique;


(6) the clarity with which the underlying scientific theory and technique can be
explained to the court; and


(7) the experience and skill of the person(s) who applied the technique on the
occasion in question.



Kelly, 824 S.W.2d at 573.

 Dr. David Bing, Scientific Director of CBR (Center for Blood Research)
Laboratories in Boston, a non-profit research institute affiliated with Harvard Medical School, and
holder of a Ph.D. degree in microbiology, testified that DNA profile analysis has been used since
1985 and the technique used for DNA testing in the instant cause, PCR (polymerase chain
reaction), is a process that has been widely used for about three or four years. Dr. Bing stated
that he could not think of an area of science in which PCR has not been used; that there are
guidelines formulated from a consensus of directors of crime laboratories in collaboration with
the developers of the test that his laboratory follows in performing a test. "Many experts" in the
scientific community use the PCR technique. Dr. Bing reviewed the steps of the technique used
in making the test and stated that he was satisfied that the procedure was carried out correctly and
the results were accurate. Dr. Bing found that the semen sample collected on the swab matched
the sample taken from appellant's blood. While Dr. Bing's test results did not reflect that the
match was unique to appellant so as to exclude all other persons, his findings showed that
appellant is among 6.4 percent to 8 percent of the people of his race whose semen matched that
taken from the swab.

 Janice Williamson, a medical technologist who had worked with CBR Laboratories
in various capacities since 1974, testified that she worked with Dr. Bing in performing the DNA
testing. In addition to relating the same test results stated by Dr. Bing, Williamson testified that
the swab containing semen taken from the victim and a blood sample taken from J. C., the
victim's boyfriend, were tested with the same PCR technique used in the other comparison. The
results of this test excluded J. C. as the source of the semen.

 Appellant urges that the State failed to show by clear and convincing evidence that
the population database used by CBR Laboratories to calculate the statistical probability of a
coincidental match was reliable under Kelly. In support of this argument, appellant cites
authorities critical of the FBI database used by CBR and other members of the scientific
community that do not reflect the substructures within the various racial groups. While there
appears to be some disagreement within the scientific community as to the manner in which
probability estimates are derived, the State has offered testimony from experts with impressive
qualifications to support the validity of the procedure from which they arrived at their conclusions. 
Scientific evidence may be shown to be reliable, even though not yet generally accepted in the
relevant scientific community. Kelly, 824 S.W.2d at 572. As an appellate court, we view the
evidence in the light most favorable to the trial court's decision and we will not disturb its
decision in the instant cause unless we conclude that the trial court abused its discretion in finding
that the method that the experts from CBR Laboratories used to conduct the DNA test was
reliable, relevant, and probative. See Barnes v. State, 839 S.W.2d 118, 125 (Tex. App.--Dallas
1992, pet ref'd). We hold that the trial court did not abuse its discretion in finding that the DNA
tests were reliable, that evidence of the test results was relevant, and that the probative value of
the evidence was not outweighed by any of the factors identified in Rule 403. Appellant's second
point of error is overruled.

 The judgment of the trial court is affirmed.



 

 Tom G. Davis, Justice

Before Justices Aboussie, Jones and Davis*

Affirmed

Filed: May 25, 1994

Do Not Publish



* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 74.003(b) (West 1988).