# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00492-CR

**Eluterio Juan Vega, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-99-0169, HONORABLE JACK H. ROBISON, JUDGE PRESIDING

A jury convicted Eluterio Juan Vega of the felony offense of driving while intoxicated ("DWI") as a subsequent offense. *See* Tex. Penal Code Ann. §§ 49.04(a), .09(b) (West Supp. 2001). The district court assessed punishment at confinement for a term of forty-five years. Vega raises two issues on appeal. He contends that the trial court abused its discretion by allowing (1) the arresting police officer to testify to the results of a horizontal gaze nystagmus test administered in the field and (2) testimony concerning Vega's failure to appear at a prior hearing in this case. Finding no reversible error in the trial court's rulings, we overrule the points of error and affirm the judgment.

## BACKGROUND

Just after midnight on June 22, 1996, Department of Public Safety Officer Jesse Amaya stopped Vega for a traffic infraction as he was driving his automobile southbound on Interstate Highway 35 in Hays County. After pulling over the vehicle, Amaya asked Vega to step

out of his automobile. As they spoke, Amaya noticed that Vega had a strong odor of alcohol on his person and breath. Based on his observations, Officer Amaya, a certified sobriety test practitioner, asked Vega to perform a number of field sobriety tests.

First, Amaya conducted a horizontal gaze nystagmus ("HGN") test, in which he asked Vega to follow the officer's pen with his eyes from side to side without moving his head, to check the "tracking" and movement of Vega's eyes. Next, Amaya asked Vega to perform a balance test. He then administered both the HGN test and the balance test a second time. Based upon the results of these tests and his observations, Amaya formed the opinion that Vega was intoxicated and placed him in custody. After being transported to the Hays County Sheriff's office, Vega performed additional tests, which were recorded on videotape. He was also given a breath test that revealed a blood alcohol concentration of .139, a level in excess of the legal limit for intoxication. *See id.* § 49.01(2)(B) (West Supp. 2001).

**DISCUSSION**

*Admissibility of the HGN Test*

In his first point of error, Vega challenges the manner in which Amaya conducted the HGN test because the State failed to prove that the test was performed in accordance with sound scientific methodology. Vega acknowledges that the test and its underlying methodology are valid, but asserts that in this instance Amaya failed to properly administer the test.

To be admissible, expert testimony must be both sufficiently reliable and relevant to aid the jury in reaching accurate results. Tex. R. Evid. 702; *Hartman v. State*, 946 S.W.2d 60, 62 (Tex. Crim. App. 1997). Evidence based on scientific theory is reliable if the underlying

2

scientific theory is valid and the technique implementing the theory is valid and was properly applied. *Hartman,* 946 S.W.2d at 62; *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992). The proponent of the evidence carries the burden, which must be established by clear and convincing evidence. *Kelly*, 824 S.W.2d at 573.

We review the admission of scientific evidence under an abuse of discretion standard. *Id.* at 574. Thus, if the trial court's ruling was within a zone of reasonable disagreement, we will not disturb its ruling. *Id.*; *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

In a hearing outside the presence of the jury, Amaya testified that he administered the HGN test twice at the side of the road and once more in an abbreviated fashion on videotape at the Sheriff's office. Amaya testified that he correctly administered the test at the side of the road. Because Amaya testified that he did not conduct the HGN test in the office in compliance with DPS procedures, the court excluded that test from evidence. On cross examination, defense counsel sought to establish that, as in the videotaped version of the test, Amaya had failed to administer the roadside HGN tests in accordance with departmental protocol by failing to ask predicate questions, such as whether Vega was wearing contact lenses, and by taking insufficient time to correctly apply the test. Because on the videotaped version of the test Amaya had failed to allow sufficient time to check Vega's eyes for smooth pursuit of the pen, defense counsel sought to establish that he failed to do so when he administered the test in the field.

Amaya testified that he had received his practitioner certification to administer the HGN test, and he described the manner in which he routinely conducted the test in the field.

Amaya defined nystagmus as an involuntary jerking or movement of the eye. *See also Emerson v. State*, 880 S.W.2d 759, 765 (Tex. Crim. App. 1994). The HGN test is based upon the theory that this jerking movement increases with the consumption of alcohol. *See id.* at 766 & n.3. As the person follows an object, such as a pen, from side to side with his eyes, the amount of nystagmus will increase when the eyes are at the extremes of lateral movement. *See id.* Thus, if an individual is intoxicated, his eyes will not pursue the pen with a smooth movement. *See id.* at 766.

Amaya testified that he administered the test properly, checking Vega's eyes for both smooth pursuit of the pen and equal tracking by the eyes. Defense counsel sought to establish that Amaya failed to administer the test in accordance with the DWI Detection Manual utilized by the Department of Public Safety. Specifically, defense counsel sought to show that Amaya rushed the test and failed to check Vega's pupils or to observe Vega's eyes as he conducted the test. Although Amaya did not have an independent recollection of the actual field HGN test, he testified that he followed his routine practice, administering the test with the proper technique and following the proper procedures as he was trained. Concluding that the evidence relating to the field HGN test was a matter of credibility for the jury, the district court admitted the testimony into evidence.

In *Emerson v. State*, the Texas Court of Criminal Appeals took judicial notice of the validity of the theory underlying the HGN test and reviewed the technique approved for applying the test. 880 S.W.2d at 766. Generally, the technique requires the officer to look for three indicators when performing the test: (1) the absence of smooth tracking in the eyes; (2)

4

distinct nystagmus at maximum deviation; and (3) onset of nystagmus prior to a forty-five-degree angle. *Id.* According to Amaya, he conducted the test applying the correct technique and found that Vega exhibited these indicators.

In *Emerson,* the court also observed that police officers must be properly trained and certified to conduct the HGN and other sobriety tests. *Id.* at 766-67. The court noted with approval the Texas certification process administered by the Texas Commission on Law Enforcement Officer Standards and Education ("TCLEOSE"). *Id.* Here, after testifying to the specifics of the HGN test, Amaya described his training and certification, which was in accordance with TCLEOSE standards.

Following the hearing outside the presence of the jury, the court excluded the videotaped version of the test from evidence, but allowed the State to adduce evidence concerning the test conducted in the field. Because the court found that the manner in which the officer conducted the test was a matter of credibility to be decided by the jury, he concluded that the testimony was admissible. After reviewing the record, we cannot conclude that the court abused its discretion. We overrule Vega's first point of error.

***Admissibility of Evidence of Flight***

In his second point of error, Vega urges that the court improperly permitted testimony that Vega failed to appear at a prior court docket setting. He argues that the trial court failed to conduct a rule 403 balancing test before admitting the evidence of flight. The State responds that it provided notice of its intent to introduce the evidence and that it was properly admitted by the court.

5

Because the alleged offense occurred in June 1996 and Vega was not tried and convicted until March 2000, the State sought to explain the delay in prosecuting this case by presenting evidence of Vega's failure to appear at the prior hearing. The court found that the evidence of Vega's failure to appear was admissible "as evidence to show flight from prosecution."

Evidence of flight is admissible as a circumstance from which an inference of guilt may be drawn. *Burk v. State*, 876 S.W.2d 877, 903 (Tex. Crim. App. 1994). However, before such evidence is admitted, it must appear that it has some relevance to the offense under prosecution. *Id*. Once this relevancy requirement is met, evidence of flight to avoid arrest is admissible, unless the defendant affirmatively shows that the flight was directly connected to some other, unrelated transaction and that it was not connected with the charged offense. *Id.*; *Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994).

Rule 403 of the Texas Rules of Evidence provides that relevant evidence is admissible, unless the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403; *Montgomery*, 810 S.W.2d at 389. The trial court is given wide latitude, and this Court should not reverse the trial court's ruling if the ruling is within a reasonable zone of disagreement. *Montgomery*, 810 S.W.2d at 391.

To preserve error for appeal concerning the admission of evidence, the defendant must lodge a timely and reasonably specific objection and obtain a ruling on that objection. Tex. R. App. P. 33.1(a)(1); *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). When the trial court considers and overrules an objection outside the presence of the jury, the objection

need not be repeated when the evidence is actually presented to the jury. *Ethington*, 819 S.W.2d at 858. In addition, error may be preserved by a running objection, so long as the objection is made timely and states the specific grounds for the objection. *Id.* at 859. The objecting party, however, should ensure that the running objection "does not encompass too broad a reach of subject matter over too broad a time or over different witnesses." *Id.*

Here, in a very brief hearing at the commencement of trial, not all of which is in the record, the trial court ruled generally that evidence relating to Vega's failure to appear was relevant and further, that it was admissible on the issue of guilt. After the trial court stated that evidence of Vega's failure to appear was "probably admissible," Vega asserted a rule 403 objection:

> I just wanted to make a 403 objection for--for the record. I think it might be inappropriate and any relevancy is exceeded by the danger of unfair prejudice. And . . . if that's still the ruling of the Court based upon the 403 objection, Your Honor, I think that the testimony and the--the facts need to speak for itself and not acceptable conduct as to--as to guilt or innocence.

The trial court responded by offering a limiting instruction, suggesting that the jury must first find the evidence of flight beyond a reasonable doubt and then they could consider it to show culpable mental state. Vega then requested a running objection; however, he did not clearly articulate the specific grounds for the objection or the evidence that he found objectionable. The record does not clearly reflect that Vega asserted a running objection based on rule 403. Instead, it appears that the running objection was directed at the admissibility of the evidence of flight to show guilt or innocence.

7

Even if we were to construe Vega's running objection as a rule 403 objection, he later waived it when he expressly stated, "No objection" to the admission of State's Exhibit 9, which evidenced Vega's failure to appear at a preliminary docket setting.[1] *Massey v. State*, 933 S.W.2d 141, 149 (Tex. Crim. App. 1996). In any event, because the brief presentation of evidence relating to Vega's failure to appear was arguably relevant to show consciousness of guilt and a reason for the passage of time in the prosecution, we cannot conclude that the court's ruling was outside the "reasonable zone" required for admissibility. Vega's second point of error is overruled.

### CONCLUSION

We overrule Vega's points of error and affirm the judgment of the trial court.

 

Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Affirmed

Filed: May 3, 2001

Do Not Publish

---

[1] State's Exhibit 9 consisted of a bailiff's certificate indicating that Vega failed to appear at a court docket setting and a capias issued by the trial court as a result of Vega's failure to appear.