COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-01-190-CR
 
JOE ELBERT MILLS                                                            
APPELLANT
V.
THE STATE OF TEXAS                                                 
      STATE
------------
FROM COUNTY CRIMINAL COURT NO. 7 OF TARRANT COUNTY
------------
OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW
------------
I. Introduction
A jury convicted Appellant Joe Elbert Mills of driving while intoxicated (DWI),
and the trial court assessed punishment at ninety days' confinement and a $500
fine. In two points, Appellant complains about the factual sufficiency of the
evidence to support the jury's verdict and the trial court's decision to allow
the admission of radar gun results absent any showing of admissibility of such
results under rule 702 of the rules of evidence. On August 30, 2002, we issued
an opinion and judgment reversing the judgment and remanding the case for a new
trial. The State has filed a petition for discretionary review in the court of
criminal appeals. Pursuant to Texas Rule of Appellant Procedure 50, we withdraw
our opinion and judgment and substitute the following opinion and accompanying
judgment affirming the trial court's judgment.
II. Background
On October 14, 2000, Officer Marcellous Anderson with the Texas Department of
Public Safety stopped Appellant for traveling seventy-two miles per hour in a
sixty mile-per-hour zone. When Officer Anderson approached Appellant, he noticed
a moderate smell of alcohol emanating from the vehicle and that Appellant's eyes
were red and glassy. Appellant failed a number of field sobriety tests, and he
was arrested.
III. Admissibility of the Radar Gun Evidence
In his second point, Appellant argues the trial court erred in allowing
Officer Anderson to testify about the results of the radar gun without a showing
of its admissibility under rule 702 of the rules of evidence and Kelly v.
State. Tex. R. Evid. 702; Kelly v. State, 824 S.W.2d 568 (Tex.
Crim. App. 1992). During trial, Appellant objected to Officer Anderson's
testimony concerning the radar gun results on the ground that "[t]here
hasn't been any showing that. . . verification, how he would know that, if
instruments were used, the verity [sic] of those instruments, seven-oh-four
[sic] -- whether there is a scientific theory behind those instruments, and
whether or not those scientific theories are, in fact, valid." Appellant
then took Officer Anderson on voir dire, during which he questioned him about
his knowledge of the underlying scientific theories of the radar gun. The State
argues that Appellant's objections were too general and did not specify that he
was complaining about the State's failure to satisfy the Kelly
requirements for the reliability of scientific evidence. See Kelly, 824
S.W.2d at 573.
To preserve a complaint for our review, a party must have presented to the
trial court a specific objection, request, or motion, or must state the specific
grounds for the objection if it is not apparent from the context. Tex. R. App.
P. 33.1(a)(1); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim. App.
1998) (op. on reh'g), cert. denied, 526 U.S. 1070 (1999). In Kelly,
the court of criminal appeals established a set of factors that the proponent of
expert testimony or evidence based on scientific theory must show by clear and
convincing evidence before the proposed evidence may be introduced. To be
considered reliable, evidence based on a scientific theory must satisfy three
criteria: (1) the underlying scientific theory must be valid; (2) the technique
applying the theory must be valid; and (3) the technique must have been properly
applied on the occasion in question. Kelly, 824 S.W.2d at 573. While
the State argues that Appellant's objection to the radar gun results was not
sufficiently specific to preserve error, we note that Appellant's objection
specifically complained of the validity of the scientific theories and the
veracity of the instruments used to test those theories, which constitute two of
the three Kelly requirements of reliability. As such, we believe that
while Appellant's objection is not the picture of clarity, the context of his
objection made clear that he was contesting the radar gun's reliability under Kelly.
Consequently, we hold that Appellant preserved error on his complaint, and we
will address his complaint on its merits.
In Hartman v. State, 946 S.W.2d 60, 63 (Tex. Crim. App. 1997), the
court concluded that the Kelly factors apply to all evidence based on a
scientific theory and not just to evidence based on novel scientific theories.
Relying on this and the court of criminal appeals' ruling in Kelly, the
El Paso Court of Appeals concluded that "although radar is a familiar
concept, it is based on a scientific theory and therefore subject to proof of
reliability and relevance under Kelly." Ochoa v. State,
994 S.W.2d 283, 284 (Tex. App.--El Paso 1999, no pet.).
Pursuant to Ochoa, Appellant argues that Officer Anderson's
testimony concerning the radar gun was subject to the Kelly
requirements for admitting scientific evidence under rule 702 of the rules of
evidence. Tex. R. Evid. 702; Kelly, 824 S.W.2d at 573. More
recently, however, the Texarkana Court of Appeals held that even under Kelly,
the underlying scientific principles of radar are indisputable and valid as a
matter of law:

 When dealing with well-established scientific theory, Kelly's
 framework provides courts flexibility to utilize past precedence and generally
 accepted principles of science to conclude its theoretical validity as a
 matter of law. To strictly construe Kelly otherwise would place a
 significant burden on judicial economy by requiring parties to bring to court
 experts in fields of science that no reasonable person would challenge as
 valid. . . .
 . . . .
 . . . [I]n 1979 the Texas Court of Criminal Appeals in Masquelette [v.
 State], 579 S.W.2d [478,] 481 [(Tex. Crim. App. [Panel Op.] 1979)],
 pronounced once and for all that the State is not required to call an expert
 witness to establish the underlying theory of radar.
 Although Kelly modified the pre-existing scheme for determining
 the admissibility of scientific evidence, it also provides flexibility to
 courts to apply both generally-accepted scientific principles and previous
 legal determinations.
 In light of society's widespread use of radar devices, and considering
 other courts' acceptance of radar, we view the underlying scientific
 principles of radar as indisputable and valid as a matter of law.

Maysonet v. State, No. 06-01-00024-CR, slip op. at 7-9, 2002 WL
31306609, at *3-4 (Tex. App.--Texarkana Oct. 16, 2002, no pet. h.). We agree
with the principles enunciated in Maysonent and hold that the
underlying scientific principles of radar are indisputable and valid as a matter
of law. Our holding, however, only concludes that the underlying scientific
theory of radar is valid. Under Kelly, the State must still establish
that the officer applied a valid technique and that it was correctly applied on
the particular occasion in question. Kelly, 824 S.W.2d at 573; Maysonet,
slip op. at 9, 2002 WL 31306609, at *4.
Officer Anderson's testimony concerning his use of the radar gun was as
follows:

 
 [STATE:] What training in radar have you received?
 
         [OFFICER ANDERSON:] Well, like I
 say, we have a class also while we went through the academy to get certified
 to operate the radar as far as setting it up and mounting it, and like I say,
 a lot of on-the-job training as far as using it every day.
 
 [STATE:] Okay. So as a police officer, you have operated a radar?
 [OFFICER ANDERSON:] Yes, ma'am.
 [STATE:] Okay, and how often have you operated a radar unit?
 [OFFICER ANDERSON:] Several times.
 [STATE:] Okay. What does a radar unit consist of?
 
         [OFFICER ANDERSON:] As far as
 the antenna and the box that shows, I guess, the speed.
 
 [STATE:] How does the radar unit operate?
 
         [OFFICER ANDERSON:] Well, if you
 have a -- We have a button outside our car. You turn it on at the front and
 the rear, and once it picks up a vehicle's speed, it sends out like waves,
 which hits the vehicle and comes back to the radar, and then it prints out the
 speed of the vehicle on the radar.
         [STATE:] Are there tests you
 conduct to determine if the radar unit is working properly?
          [OFFICER ANDERSON:] Yes,
 ma'am.
 
 [STATE:] And what are those tests?
 
         [OFFICER ANDERSON:] At the
 beginning of each shift, we have tuning forks in our car, which we use to
 calibrate our radar at the beginning and end of the shift, and every time we
 stop a vehicle, we also have an in-car calibration, which you hit a button and
 it flashes some numbers to let you know that your radar is working properly.
         [STATE:] On October . . . 14th
 of 2000, did you calibrate your radar?
         [OFFICER ANDERSON:] Yes, ma'am.
         [STATE:] Did you determine that
 it was functioning properly?
         [OFFICER ANDERSON:] That's
 correct, ma'am.
         [STATE:] How did you conduct
 this calibration on this date?
         [OFFICER ANDERSON:] Well, at the
 beginning of the shift I used my tuning forks, and I don't remember exactly
 how many stops I had made before this one as far as speeding or anything.
         [STATE:] Did you calibrate your
 unit at any other time during your patrol shift?
         [OFFICER ANDERSON:] Yes, ma'am.
         [STATE:] And when was that?
         [OFFICER ANDERSON:] Well, I know --
 like I say, after this situation here, I went back to work and stopped other
 vehicles.
         [STATE:] Okay. On all of these
 occasions, did you find your radar was working properly?
         [OFFICER ANDERSON:] Yes, ma'am.

We hold that this testimony was sufficient to satisfy the second and third
prongs of Kelly. Thus, the trial court did not abuse its discretion in
allowing Officer Anderson to testify regarding the results of the radar gun. We
overrule point two.
IV. Factual Sufficiency of the Evidence
In Appellant's first point, he challenges the factual sufficiency of the
evidence to sustain his conviction. In reviewing the factual sufficiency of the
evidence to support a conviction, we are to view all the evidence in a neutral
light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App.
1996). Evidence is factually insufficient if it is so weak as to be clearly
wrong and manifestly unjust or the adverse finding is against the great weight
and preponderance of the available evidence. Johnson, 23 S.W.3d at 11.
Therefore, we must determine whether a neutral review of all the evidence, both
for and against the finding, demonstrates that the proof of guilt is so
obviously weak as to undermine confidence in the verdict, or the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof. Id.
In performing this review, we are to give due deference to the fact finder's
determinations. Id. at 8-9; Clewis, 922 S.W.2d at 136.
Consequently, we may find the evidence factually insufficient only where
necessary to prevent manifest injustice. Johnson, 23 S.W.3d at 9, 12; Cain
v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).
The evidence at trial showed that when Officer Anderson pulled Appellant over
for speeding that an odor of alcohol emanated from his mouth. Appellant's eyes
were light red and glassy, and he was unsteady on his feet when trying to walk.
Officer Anderson administered three field sobriety tests, and Appellant failed
all three of them. Appellant also admitted to drinking and refused to take a
breath test. Based on Officer Anderson's training and experience, he testified
that in his opinion Appellant had lost the normal use of his mental and physical
faculties and that Appellant was intoxicated by reason of the introduction of
alcohol. We hold that this evidence was factually sufficient to sustain
Appellant's conviction for DWI.
Appellant argues, however, that the evidence is factually insufficient
because Officer Anderson failed to readminister the sobriety tests in the
"video room" of the police station, which had the effect of denying
the jury the "best evidence" of Appellant's intoxication. Appellant
cites no authority in support of his argument that the State is required to
present the "best evidence" of intoxication to sustain a conviction
for DWI. See Tex. R. App. P. 38.1(h); Rocha v. State, 16
S.W.3d 1, 20 (Tex. Crim. App. 2000). Because the evidence was factually
sufficient to sustain the conviction, we overrule Appellant's first point.
V. Conclusion
Having overruled Appellant's two points, we affirm the trial court's
judgment.
 
                                                                   
SAM J. DAY
                                                                       
JUSTICE
 
PANEL A: DAY and GARDNER, JJ.; and WILLIAM BRIGHAM (Senior Justice, Retired,
Sitting by Assignment).
 
PUBLISH
[Delivered: December 6, 2002]