Opinion issued December 7, 2006


 





 



In The

Court of Appeals

For The

First District of Texas






NO. 01-05-00960-CR







HOWARD FORREST RISHER, Appellant


v.


THE STATE OF TEXAS, Appellee






On Appeal from the 232nd District Court

Harris County, Texas

Trial Cause No. 992517






O P I N I O N

 A jury convicted appellant, Howard Forrest Risher, of possession with intent
to deliver more than 4 grams and less than 200 grams of cocaine, and assessed
punishment at 50 years in prison. Appellant challenges the trial court's admitting the
expert testimony of Officer D.L. Oglesby as an abuse of discretion. We affirm. 

Facts

 Appellant agreed to sell Jackie Wilson, a police informant, two kilograms of
cocaine. After two failed attempts, appellant met with Wilson outside of a Luby's
restaurant on June 28, 2004. Wilson entered a car driven by Juan Martinez and with 
appellant in the back seat. After driving away from the restaurant, Martinez parked
the car and proceeded to remove a bag from under the seat. He took out two brick-shaped objects wrapped in plastic and showed them to Wilson. Martinez then made 
a V-shaped cut in the wrapping of each brick and allowed Wilson to taste the
substance. 

 After tasting the substance and identifying it as cocaine, Wilson informed
appellant and Martinez that he would have to make a call in order to get the money
to complete the transaction. Appellant and Martinez dropped Wilson off at a gas
station across the street from the restaurant. Wilson proceeded to call Officer
Gonzales, a member of the surveillance team, to inform him about the deal. However,
as Wilson was making the phone call, appellant got into the driver's seat of the car
and, with Martinez in the back seat, sped away. Police officers, who in four or five
unmarked cars had been monitoring the transaction, pursued appellant as he drove
onto the freeway, and officers in two marked cars joined the chase. Appellant exited
the freeway and drove into a residential neighborhood. He lost control of the car and
crashed it into a utility pole. 

 The police pulled appellant and Martinez out of the car and searched it, but
except for a small bag containing marijuana, found no other narcotics. Martinez told
the officers that appellant had thrown the two bricks of cocaine out of the window
during the chase. The officers searched the freeway where the chase had occurred
and found two bricks of cocaine near the intersection where appellant had left the
freeway. The plastic wrapping around each brick had a V-shaped cut. Wilson
identified the bricks as those he had seen in appellant's possession. Gonzales
testified that, to link the bricks of cocaine to appellant and Martinez, he called
Oglesby, a canine handler, to perform a human-scent lineup. 

 After arriving on the scene, Oglesby prepared a scent pad by dropping a sterile
gauze pad into the plastic bag where the police officers had placed the bricks of
cocaine. He then directed appellant, an African-American, and five Caucasian police
officers to form a lineup. After the six men were in place, Oglesby retrieved his
bloodhound, Lucy, from his truck and let her sniff the scent pad. On Oglesby's signal
to start, Lucy went directly to the lineup and, when she got to appellant, stopped and
touched her nose to him. Oglesby testified that this was how Lucy was trained to do
her alert. 

 The trial court held a hearing the day before trial to hear appellant's objections
to Oglesby's testimony regarding the scent lineup. (1) At the close of the hearing the
judge ruled that he would allow Oglesby's testimony. 

Admissibility of Expert Testimony

 In his sole point of error, appellant contends that the trial court erred in
admitting the expert testimony of Oglesby. Specifically, he argues that Oglesby
lacked the qualifications to conduct a human-scent lineup, that Lucy was not a
reliable scent trailer, and that the lineup was not objective. 

A. Standard of Review 

 We review a trial court's decision to admit or exclude scientific testimony for
abuse of discretion and will uphold the ruling if it is within the zone of reasonable
disagreement. Sexton v. State, 93 S.W.3d 96, 99 (Tex. Crim. App. 2002). A trial
court abuses its discretion when it acts without reference to any guiding rules or
principles. Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)
(citing Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985)
as stating appropriate test for abuse of discretion). 

 The Court of Criminal Appeals has held that rule 702 of the Texas Rules of
Evidence requires the satisfaction of a three-part test before expert scientific
testimony is admissible. See Kelly v. State, 824 S.W.2d 568, 573 (Tex. Crim. App.
1992) (holding that admissibility of novel scientific evidence was governed by three-part reliability test: (1) scientific theory must be valid, (2) application of theory must
be valid, and (3) technique must have been properly applied); Hartman v. State, 946
S.W.2d 60, 62-63 (Tex. Crim. App. 1997) (applying Kelly requirements to all
scientific evidence, whether or not it was novel). (2) In determining reliability, courts
consider factors such as (1) whether the theory or technique can be or has been tested,
(2) whether the theory or technique has been subjected to peer review or publication,
(3) the known or potential rate of error, and (4) general acceptance within the relevant
scientific community. Nenno v. State, 970 S.W.2d 549, 560 (Tex. Crim. App. 1998),
overruled on other grounds, State v. Terrazas, 4 S.W.3d 720 (Tex. Crim. App. 1999). 
In Nenno, the Court of Criminal Appeals explained that these factors do not
necessarily apply outside of the hard sciences, and that the appropriate questions in
considering the reliability of other fields are (1) whether the field of expertise is a
legitimate one, (2) whether the subject matter of the expert's testimony is within the
scope of that field, and (3) whether the expert's testimony properly relies upon or
utilizes the principles involved in the field. Nenno, 970 S.W.2d at 561. 

B. Discussion

 Appellant relies on the third prong of the Nenno test to challenge the
admissibility of Oglesby's expert testimony. Extrapolating from opinions of other
jurisdictions regarding the admission of scent-lineup evidence, the Fourteenth Court
of Appeals set out three factors to determine whether the third prong is satisfied. 
Winston v. State, 78 S.W.3d 522, 526-27 (Tex. App.--Houston [14th] 2002, pet.
ref'd). The three factors are: (1) the qualifications of the particular trainer, (2) the
qualifications of the particular dog, and (3) the objectivity of the particular lineup. 
Id. at 527. 

1. The Qualifications of Oglesby

 Appellant contends that Oglesby was not qualified to conduct a human-scent
lineup because he did not meet the qualifications of Deputy Pikett, the canine officer
in Winston. Pikett had 11 years experience working with bloodhounds, had written
articles on the subject, attended 160 seminars on bloodhound tracking, lectured in
three seminars, had trained dogs for other police departments, had been used by the
FBI, ATF, and other agencies, had been observed by two recognized experts in the
field who approved his techniques and recommended him to others, and had testified
in eight to ten trials. Id. 

 Our task is not to compare the qualifications of different trainers, but to
determine whether the qualifications of the particular trainer in the present case meets
the Nenno test. At the suppression hearing, Oglesby testified that he had handled
canines for the Bellaire Police Department for 12 years. He had worked first with a
Labrador retriever that was a narcotics dog and then, for eight years, with a
bloodhound, Lucy, that was a human-scent dog. He also testified that he had
attended training schools for handling human-scent dogs twice a year for three years
and was also trained by Pikett, the deputy who testified in the Winston case. Oglesby
further testified that he had given instruction to other officers or canine handlers in
"trailing and bloodhound training" and that his skills in conducting human-scent
lineups had been used by at least 30 other law enforcement agencies. 

2. The Qualifications of the Particular Dog

 The Winston court concluded that a dog is qualified if "it (1) is of a breed
characterized by acuteness of scent and power of discrimination, (2) has been trained
to discriminate between human beings by their scent, (3) has been found by
experience to be reliable, (4) was given a scent known to be that of the alleged
participant of the crime, and (5) was given the scent within the period of its
efficiency." Id. at 527-28. Appellant contends that the State did not establish Lucy's
reliability because Oglesby did not testify to her success rate or to whether or not she
had misidentified anyone. Appellant also argues that Lucy's health problems caused
her to be unreliable. 

 Oglesby testified that Lucy had participated in 74 lineups and had successfully
identified the suspect in 63 of them. The remaining 11 were "no starts," meaning that
the person she was to identify was not in the lineup. Oglesby testified that, to his
knowledge, Lucy had not misidentified anyone in a lineup. 

 Oglesby testified that, "sometime around May" of that year, Lucy had begun
having health problems. She was gaining and losing weight, and the veterinarian had
put her on medication. Oglesby testified that he continued doing trails and lineups
with Lucy and saw no decline in her ability, except that she was a little slower. He
further testified that there was no indication that her medication interfered with her
ability to trail a human scent. 

3. The Objectivity of the Particular Lineup

 Appellant contends that the lineup was not objective because Oglesby did not
conduct a lineup using only scent pads, as conducted by Pikett in Winston. Oglesby
testified that he has a set procedure for conducting scent lineups and that he learned
the method at one of the schools he had attended. He further testified that he was
aware of the scent-pad-only lineup, but that he considered the live lineup to be more
accurate. 

 Appellant also asserts that the lineup was not objective because not everyone
in the lineup was of the same race. Oglesby testified that it did not make a difference
that the individuals in the lineup were not of the same race. When counsel suggested
that the National Bloodhound Association's manual said that it was best to have
people of the same race in the lineup, Oglesby agreed, but said it was not always
possible. 

 Finally, appellant contends that the lineup was not objective because appellant
was the only person in the lineup wearing handcuffs. Oglesby's testimony that the
handcuffs did not affect the objectivity of the lineup was not controverted. 

Conclusion

 Applying the Winston factors, we conclude that the trial court could have
reasonably concluded that Oglesby was qualified to testify as a canine handler for
scent tests, the dog was qualified to perform scent tests, and the lineup was
sufficiently objective to be reliable. Accordingly, we hold that the trial court did not
abuse its discretion in admitting the testimony of Officer Oglesby regarding the scent
lineup. We overrule appellant's sole point of error. 

 We affirm the judgment. 



 Sam Nuchia

 Justice


Panel Consists of Justices Nuchia, Jennings, and Higley


Publish. Tex. R. App. P. 47.2(b). 


 
1. The trial court referred to the hearing as a Daubert hearing, although there was
no written motion or objection to the testimony, and no oral motions or objections concerning
Oglesby's testimony appear in the record. See Daubert v. Merrell Dow Pharms., Inc., 509
U.S. 579, 591-92, 113 S. Ct. 2786, 2795-96 (1993).
2. Rule 702 of the Texas Rules of Evidence provides: "If scientific, technical, or
other specialized knowledge will assist the trier of fact to understand the evidence or to
determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience,
training, or education may testify thereto in the form of an opinion or otherwise." Tex. R.
Evid. 702.