NO. 07-01-0002-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JANUARY 3, 2002

_____


JOHNNY CARL DYE, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2000-434617; HONORABLE WILLIAM SHAVER, JUDGE

_____

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

Upon a plea of not guilty, appellant Johnny Carl Dye was convicted by a jury of driving while intoxicated, enhanced, and punishment was assessed by the trial court at 30 years confinement. Presenting two points of error, appellant contends the trial court erred in (1) overruling his objection to the testimony of Officer Watkins regarding the horizontal gaze nystagmus (HGN) test administered on February 29, 2000, and (2) in overruling his

objection to the testimony of Sheryl Ochoa regarding his blood alcohol content (BAC) at the time he was stopped because it was calculated by retrograde extrapolation. Based upon the rationale expressed herein, we affirm.

At approximately 1:38 a.m. on February 29, 2000, appellant was stopped by Officer Mark Watkins for speeding. According to Watkins's testimony and a video of the stop that was admitted into evidence, appellant was asked to exit his vehicle and perform three field sobriety tests. Using a pen and flashlight, Watkins administered the HGN test looking for six clues, three in each eye, and testified that he observed all six. He proceeded with a walk and turn test and a one-leg test, which he testified appellant did not successfully complete. At that time Watkins decided to place appellant under arrest for driving while intoxicated. A search of his vehicle did not produce any containers of alcoholic beverages. Two separate breath tests voluntarily taken approximately 90 minutes after his arrest showed appellant's BAC to be .123 at 3:07 a.m. and .135 at 3:10 a.m.

Outside the jury's presence, Watkins testified about the HGN results and Sheryl Ochoa, a breath alcohol testing supervisor, testified about appellant's BAC at the time he was driving. The trial court granted appellant a running objection to Watkins's testimony regarding his qualification as an expert witness and a running objection to Ochoa's testimony regarding appellant's BAC at the time he was driving. Appellant was convicted of driving while intoxicated, enhanced by two prior convictions for driving while intoxicated, and was sentenced to 30 years confinement.

By his first point of error, appellant contends the trial court erred in overruling his objection to the testimony of Watkins regarding the administration of the HGN test on February 29, 2000. Specifically, appellant challenges the officer's qualification as an expert witness because he had not yet been certified by the Texas Commission on Law Enforcement Officer Standards and Education (TCLEOSE). We agree.

Nystagmus is an involuntary rapid oscillation of the eyeballs in a horizontal, vertical, or rotary direction. Emerson v. State, 880 S.W.2d 759, 765 (Tex.Cr.App. 1994), *cert. denied*, 513 U.S. 931, 115 S.Ct. 323, 130 L.Ed.2d 284 (1994). HGN is a variety of nystagmus that occurs when an individual's eyes are deviated to the lateral extreme. *Id.* In *Emerson*, the Court held that testimony concerning HGN results is novel scientific evidence and that it must satisfy the reliability test of Kelly v. State, 824 S.W.2d 568 (Tex.Cr.App. 1992). To be reliable, evidence based on a scientific theory must satisfy three criteria: (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been applied properly on the occasion in question. *Id.* at 573; *see also* Tex. R. Evid. 702.

*Emerson* sets forth in great detail the training that an officer must undergo to become certified to administer the HGN test and other field sobriety tests. 880 S.W.2d at 766-67. According to a training pamphlet, an officer must look for the following three clues in each of the suspect's eyes: (1) an inability to pursue smoothly an object, or stimulus, moving sideways across the suspect's field of vision; (2) distinct or pronounced nystagmus

3

at the eye's maximum horizontal deviation; and (3) an angle of onset of nystagmus of less than or equal to 45 degrees. *Id.* at 766. Because nystagmus may also be caused by other factors such as drugs, neurological disorders, or brain damage, the HGN testing procedure requires an officer to screen a suspect for other factors (*i.e.*, corrective lenses, brain damage, medical disorders) that could lead to an incorrect determination as to whether the suspect is intoxicated. *Id.* Other requirements for certification include 24 hours of classroom instruction and 16 hours of field evaluation, during which an officer must complete and document 35 test cases of administration of field sobriety tests, including the HGN test. Only after completion of the 35 test cases, submission of the results, and approval by the Texas Engineering Extension Service, Law Enforcement Training Division, does an officer receive proficiency certification from TCLEOSE.

Appellant challenges whether the third prong of *Kelly,* which requires a witness to be qualified as an expert, was satisfied. The qualification of a witness to testify as an expert is within the discretion of the trial court. Tex. R. Evid. 104(a); Weatherred v. State, 15 S.W.3d 540, 542 (Tex.Cr.App. 2000). The trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement and when it acts without reference to any guiding rules or principles. Montgomery v. State, 810 S.W.2d 372, 391 (Tex.Cr.App. 1990) (op. on reh'g).

To qualify as an expert in administration of an HGN test, among other things, the State must introduce evidence that the witness was certified by the State of Texas to

administer the test at the time of the incident. *Emerson*, 880 S.W.2d at 769. Pursuant to Rule of Evidence 705(b), Watkins testified outside the jury's presence that on February 29, 2000, he was not yet certified to administer the HGN test and that he did not receive his certification until June 2000. Watkins did not offer any evidence regarding his hours of classroom instruction, field evaluation, or the number of test cases in which he had administered field sobriety tests as of February 29, 2000. The only evidence presented was that while he was in training at the police academy, his field training officer assisted him in administering HGN tests. Watkins also testified that he could not recall asking appellant whether he was wearing corrective lenses at the time of the stop. A review of the video admitted into evidence shows that no inquiry was made regarding appellant's use of corrective lenses or any of the other factors (*i.e.*, brain damage, medical disorders) that an officer must screen for to avoid an incorrect determination of intoxication. Without practitioner certification, we conclude that Watkins was not qualified to testify as an expert witness regarding the results of the HGN test administered by him on February 29, 2000. Thus, under *Montgomery* we find that the trial court abused its discretion in overruling appellant's objection to Watkins's testimony. Point of error one is sustained.

By his second point of error, appellant contends the trial court erred in overruling his objection to the testimony of Sheryl Ochoa regarding his BAC at the time he was driving because it was calculated by retrograde extrapolation. We agree. The Court of Criminal Appeals has recently addressed the reliability of retrograde extrapolation. Mata

5

v. State, 46 S.W.3d 902 (Tex.Cr. App. 2001). Retrograde extrapolation is the computation back in time of the BAC–that is the estimation at the time of driving based on a test result taken at a later time. 46 S.W.3d at 908-09. The length of time necessary for alcohol to be absorbed into the blood depends on a variety of factors, including the presence and type food in the stomach, the person's gender and mental state, the drinking pattern, the type and amount of beverage consumed, and the time period of alcohol consumption. *Id.* at 909*.* Some time after drinking has ceased, the person's BAC peaks and thereafter begins to fall through the process of elimination at a slow but consistent rate. *Id.*

The proponent of the results of retrograde extrapolation must demonstrate by clear and convincing evidence that the evidence is reliable under the *Kelly* criteria. Jackson v. State, 17 S.W.3d 664, 670 (Tex.Cr.App. 2000). Reliability is established by showing the validity of the underlying scientific theory, the validity of the technique applying the theory, and proper application of the technique on the occasion in question. 824 S.W.2d at 573. In *Mata*, the Court noted that although the expert witness had "impeccable qualifications," the record did not support any extensive personal observations of the alcohol absorption and elimination processes or any ability to perform retrograde extrapolations. 46 S.W.3d at 914. Although the expert indicated a general understanding of the BAC curve, his testimony failed to explain the theory to the court with any clarity. *Id.* During his *voir dire* examination, he testified that although elimination rates are standard, absorption rates vary from person to person depending on various factors. *Id*. at 906. He conceded that

6

without a number of tests and without knowing the defendant's weight, stomach content, and drinking pattern, he could not determine the steepness of the defendant's BAC curve. *Id.* at 905. The evidence offered by the expert was not reliable as applied to Mata and the Court concluded that the trial court abused its discretion in admitting the expert's testimony pertaining to the extrapolation of Mata's BAC and remanded the cause to the appellate court to conduct a harm analysis pursuant to Rule 44.2 of the Texas Rules of Appellate Procedure. *Id.* at 917.

Appellant argues that the facts in *Mata* are "virtually identical" to those in his case. He asserts that Ochoa's explanation of the scientific theory of retrograde extrapolation is the same as the expert's explanation in *Mata*, which the Court of Criminal Appeals found unreliable. Ochoa testified regarding her qualifications as a breath alcohol test supervisor and her 19 years of experience. She explained with clarity the process for determining a person's alcohol concentration with a breath testing instrument called the Intoxilyzer 5000. Without confusion, she explained in detail the procedure for taking a suspect's breath test and the processes of absorption and elimination of alcohol. She testified that the information she relied on to determine appellant's BAC was taken from a questionnaire completed by him when he was arrested. Although the questionnaire was not offered into evidence, Watkins testified that appellant claimed not to have eaten since the day before when he ate pancakes and sausage and that he had not slept for approximately five days because his mother was in the hospital.

During trial, Ochoa testified that in order to determine a person's BAC based on retrograde extrapolation, she requires the following information:

1. the amount of alcohol consumed and the concentration of alcohol in the beverage;
2. the time period over which it was consumed;
3. the person's gender, size, and weight; and
4. the amount of food in the person's stomach.

On direct examination, the prosecutor asked Ochoa the following question:

Q. Assuming that the defendant's alcohol concentration is declining at the time of the breath test, and assuming all those things in the hypothetical that I just gave you, what would the defendant's alcohol concentration have been at the time he was driving, if he was pulled over at approximately 1:30 in the morning?

Ochoa responded that it could possibly be around .15 or .16. However, on cross-examination, Ochoa candidly admitted that without all the correct information she could not determine appellant's BAC at the time he was driving. Ochoa's expert opinion was based on assumptions and hypotheticals. Appellant denied that he had been drinking and there was no evidence of the type or amount of alcoholic beverage consumed or the time period over which it was consumed. Despite her credentials and explanation to the trial court of the scientific theory underlying retrograde extrapolation and its application, the technique was not properly applied to appellant so as to make it reliable under *Kelly*. *See* 824 S.W.2d at 573. We conclude the trial court abused its discretion in overruling appellant's

8

objection to Ochoa's testimony regarding appellant's BAC based on retrograde extrapolation.

**Harmless Error Review**

Having determined that the trial court erred in allowing Watkins to testify regarding the results of the HGN test and in allowing Ochoa to testify regarding appellant's BAC based on retrograde extrapolation, we must now decide whether appellant was harmed by the errors.  A violation of an evidentiary rule that results in the erroneous admission of evidence is not constitutional error.  Johnson v. State, 967 S.W.2d 410, 417 (Tex.Cr.App. 1998).  When a non-constitutional error is made during trial, it will be disregarded as harmless if the error did not affect the substantial rights of the defendant.  Tex. R. App. P. 44.2(b); King v. State, 953 S.W.2d 266, 271 (Tex.Cr.App. 1997).  A substantial right is implicated when the error had a substantial and injurious effect or influence in determining the jury's verdict.  *Id*.  Watkins testified that he smelled a slight odor of an intoxicating beverage on appellant at the time he pulled him over and that his eyes were glassy and his speech slurred. In his professional opinion, Watkins determined that appellant had lost the use of his mental and physical faculties by reason of introduction of alcohol.  Tex. Pen. Code Ann. § 49.01(2)(A) (Vernon Supp. 2002).

Appellant was stopped by Watkins at approximately 1:38 a.m.  Ochoa's testimony established that at 3:07 a.m., appellant's BAC was .123 and that at  3:10 a.m., it was .135,

9

both results being above the legal limit of .08. Tex. Pen. Code Ann. § 49.01(2)(B) (Vernon Supp. 2002). Based upon Watkins's testimony that appellant did not consume any alcoholic beverages from the time he was stopped until the time the breath tests were administered, the jury could have concluded that appellant was intoxicated at 1:38 a.m. when he was stopped by Watkins. We conclude that although erroneously admitted, Watkins's and Ochoa's testimony regarding the results of the HGN test and appellant's BAC based on retrograde extrapolation did not affect appellant's substantial rights and must be disregarded. *See* Tex. R. App. P. 42.2(b). Having determined that the errors were harmless, points of error one and two are overruled.

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis
Justice

Johnson, J., concurring.

Do not publish.

10

NO. 07-01-0002-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JANUARY 3, 2002

_____

JOHNNY CARL DYE, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2000-434617; HONORABLE WILLIAM SHAVER, JUDGE

_____

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

I disagree with the majority's conclusion that because Officer Watkins had not been certified by TCLEOSE as proficient to administer the HGN test at the time of appellant's arrest, the trial court abused its discretion in admitting Watkins's testimony as an expert on the HGN test administered to appellant. However, I concur in the majority's conclusion

11

that the trial court erred in admitting Sheryl Ochoa's testimony as to appellant's blood alcohol content as of the time of his arrest and in the result reached by the majority.


                                        Phil Johnson
                                        Justice




Do not publish.