COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS




SCOTT STRONG,

                            Appellant,

v.


THE STATE OF TEXAS,

                            Appellee.

§
 
§
 
§
 
§
 
§
 
 § 


No. 08-05-00172-CR

Appeal from the

409th District Court

of El Paso County, Texas 

(TC# 20020D06239) 





O P I N I O N

            Scott Strong was indicted for manslaughter (Count I) and aggravated assault (Count II). 
The jury found him guilty of the lesser-included offenses of criminally negligent homicide
(Count I) and reckless driving (Count II). In Count I, the jury made an affirmative deadly
weapon finding. The jury assessed punishment at five years’ imprisonment and a $5,000 fine in
Count I and thirty days’ confinement and a $200 fine in Count II. Appellant raises two issues on
appeal in which he argues the trial court erred in: (1) admitting expert testimony that was not
shown to be reliable by clear and convincing evidence; and (2) failing to include the beyond-a-reasonable-doubt burden of proof instruction in the deadly weapon special issue. We affirm.            On the afternoon of July 26, 2002, Brenda Fuentes was driving in northeast El Paso,
running errands with her two young nieces, K.F. and J.F., who were in the backseat of her car. 
As Ms. Fuentes stopped at an intersection at Dyer and Marie Tobin, she looked and saw no cars
coming, so she crossed to the median that divides the two directions of traffic on Dyer. She then
looked again and saw no cars coming on the other side of Dyer. As she crossed, however, her car
was struck by Appellant’s car, an Acura Integra. Both of Ms. Fuentes’ nieces were ejected from
her car. J.F. was seriously injured, but survived the collision. K.F. was crushed under Ms.
Fuentes’ car and died.
            Several witnesses testified that immediately before the collision, Appellant’s Acura was
racing with another car on Dyer. Alex Sanchez testified that he was behind Ms. Fuentes’ car at
the intersection and initially thought that she had enough time to cross Dyer. Mr. Sanchez,
however, then heard a loud muffler sound and saw two cars coming down Dyer. Mr. Sanchez
then heard the collision. Based on the muffler sound and his racing experience, Mr. Sanchez
believed the two cars were racing. Daniel Hernandez was driving on Dyer with his wife,
Veronica. Their van was in the middle lane of Dyer and Mr. Hernandez was driving at
approximately 40 to 45 miles per hour. Two cars passed the Hernandezes’ vehicle. Based on the
speed of the two cars, the engine sounds, and their swerving in and out of traffic lanes, the
Hernandezes believed the two cars were racing. Mr. Hernandez saw the Acura crash into Ms.
Fuentes’ car.
            Jeremiah Leonard was in a parking lot on Dyer when he saw and heard the two cars pass
by on Dyer just before the collision. Mr. Leonard heard “chirping,” a screeching noise that
occurs when the tires are spinning fast during gear-shifting. Mr. Leonard was familiar with the
sound because he used to race at Thunder Alley Dragway. Mr. Leonard observed the Integra and
the Geo pass by, but could not tell which car was chirping. Both cars, however, were going
faster than all the other cars on Dyer. Based on the speed of the cars and the chirping, Mr.
Leonard believed the two cars were racing. According to Mr. Leonard, the same Geo had
previously tried to race him.
            Joshua Marquez Ortega was the driver of the Geo. Mr. Ortega had modified the body and
engine of the car to make it a “Euro” or racer-style car and admitted to having previously
engaged in street racing with his car. On that day, Mr. Ortega passed Appellant’s Acura on Dyer
and noticed Appellant began accelerating and swerving around traffic to catch up to him. 
Appellant began revving his engine to try to catch Mr. Ortega’s attention. Mr. Ortega was in the
left lane and Appellant got right behind him. According to Mr. Ortega, Appellant was trying to
race him, but Mr. Ortega was not racing. As they approached the intersection, Appellant
downshifted and passed around Mr. Ortega on the right and into the center lane. Right before the
collision, Mr. Ortega saw Ms. Fuentes’ car entering the intersection and he slowed down. 
Appellant was downshifting and changing lanes when he collided with Ms. Fuentes’ car, which
spun out and hit a stop sign and a wall. Mr. Ortega did not think Appellant saw Ms. Fuentes’ car
because his car would have been in Appellant’s line of sight. Mr. Ortega honked his horn to
warn Appellant, but Appellant’s car “just went through [Ms. Fuentes’] vehicle.” On cross-examination, Mr. Ortega testified that he was driving approximately 45 miles per hour and that
Appellant had to be going fairly faster than that because Appellant had passed him.
            Officer Antonio Portillo and his partner, Officer David Ianni, collected information and
data measurements from the scene of the collision. Specifically, they videotaped the scene,
examined the vehicles and the tire, skid, and gouge marks on the street, and prepared a scaled
diagram of the scene with the AIM System, a surveying tool used to measure and map distances.
            David Aguirre, the State’s accident reconstruction expert, testified that in his opinion,
based on his mathematical calculations using evidence collected at the scene, Appellant was
traveling at approximately 80 miles per hour, plus or minus 10 miles per hour, at the time of
impact.
            In his first issue, Appellant argues the trial court erred in admitting expert testimony that
was not shown to be reliable by clear and convincing evidence. Specifically, Appellant contends
that “the scientific reliability of the drag sled machine, and all expert testimony related thereto,
was not demonstrated by clear and convincing evidence” and he challenges “the validity and
reliability of the drag sled machine.”
            A trial court’s ruling to admit or exclude evidence is reviewed under an abuse of
discretion standard. Montgomery v. State, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990) (op. on
reh’g). Absent a clear abuse of discretion, a trial court’s decision to admit or exclude expert
testimony will not be disturbed. Wyatt v. State, 23 S.W.3d 18, 27 (Tex.Crim.App. 2000). The
admissibility of expert testimony is governed by Tex.R.Evid. 702. Pursuant to Kelly v. State,
824 S.W.2d 568 (Tex.Crim.App. 1992), the proponent of expert testimony or evidence based on
a scientific theory must show by clear and convincing evidence that the evidence is: (1) reliable
and (2) relevant to assist the trier of fact in its fact-finding duty. Kelly, 824 S.W.2d at 572;
Ochoa v. State, 994 S.W.2d 283, 284 (Tex.App.--El Paso 1999, no pet.).
            In reviewing the record, we find however that Appellant’s complaint on appeal does not
comport with his objections at trial to testimony by Officer Portillo, the officer who gathered
information at the scene by using the drag sled, and David Aguirre, the accident reconstruction
expert who used that data to calculate the minimum speed of Appellant’s vehicle at the time of
impact. Indeed, at trial Appellant objected only to the qualifications of both Officer Portillo and
Mr. Aguirre as experts in the field of accident reconstruction. Although Appellant extensively
cross-examined the witnesses on the issue of the reliability of the drag sled and its calibration, he
did not specifically object to their testimony on this basis. See Holmes v. State, 135 S.W.3d 178,
181 (Tex.App.--Waco 2004, no pet.) (qualification of the witness as an expert is a separate issue
under rule 702 and is not a criteria in the reliability test except to the extent it is a factor to weigh
in assessing the reliability of the scientific evidence). Because Appellant’s argument on appeal
does not comport with his trial objections, he has waived this issue for review.


 See
Tex.R.App.P. 33.1(a); Sterling v. State, 800 S.W.2d 513, 521 (Tex.Crim.App. 1990). Issue One
is overruled.
            In his second issue, Appellant argues the trial court erred in failing to include the beyond-a-reasonable-doubt burden of proof in the deadly weapon special issue submitted to the jury. 
Appellant claims the trial court’s omission was fundamental charge error. An affirmative finding
of a deadly weapon requires the State to prove beyond a reasonable doubt that the defendant used
a deadly weapon. Hill v. State, 913 S.W.2d 581, 583 (Tex.Crim.App. 1996). The State concedes
that this was error, but argues this error is not immune from a harmless-error analysis.
            Here, the trial court generally instructed the jury in its charge that “[t]he prosecution has
the burden of proving the Defendant guilty and it must do so by proving each and every element
of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the
Defendant.” In the application paragraphs for the lesser-included offense of criminally negligent
homicide, the court instructed the jury that the State had the beyond-a-reasonable-doubt burden
of proof. Since the jury found Appellant guilty of the lesser-included offense in the charge, it
was required to answer the following special issue:
Special Issue #1
Answer special issue #1 if and only if you have found the Defendant guilty of the
offense of Criminal Negligent Homicide.
 
Did the Defendant use or exhibit a deadly weapon to wit: a motor vehicle that in
the manner of its use or intended use was capable of causing death or serious
bodily injury, during the commission and immediate flight from said offense?
The jury answered in the affirmative.
            The Texas Court of Criminal Appeals has recently held that failure to instruct the jury on
the State’s burden of proof regarding one element of an offense is not structural error. Olivas v.
State, -- S.W.3d --, --, 2006 WL 2619964, at *4 (Tex.Crim.App. Sept. 13, 2006). Moreover,
there is no structural error in the jury charge where the jury instructions do not totally omit any
reference to proof beyond a reasonable doubt or those instructions do not misdirect the jury
concerning that burden of proof. See Olivas, --S.W.3d at --, 2006 WL 2619964, at *5. Thus,
contrary to Appellant’s contentions, the complained-of jury charge error is subject to a harmless-error analysis.
            Appellant did not object to the omission of a beyond-a-reasonable-doubt instruction to the
special issue, therefore, Appellant must show he suffered egregious harm as a result of this error. 
Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985) (op. on reh’g). Under Almanza,
reviewing courts should consider the following four factors: (1) the charge itself; (2) the state of
the evidence including contested issues and the weight of the probative evidence; (3) arguments
of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. 
Olivas, --S.W.3d at --, 2006 WL 2619964, at *4; Almanza, 686 S.W.2d at 171.
            Like in Olivas, the deadly weapon special issue in this case did not explicitly incorporate
the required beyond-a-reasonable-doubt burden of proof, however, the instructions repeatedly
told the jury that the State had the burden to prove every element of the offense beyond a
reasonable doubt. See Olivas, --S.W.3d at --, 2006 WL 2619964, at *5. No other burden of
proof was provided to the jury. With regard to the state of the evidence, we observe that Officer
Portillo testified he has investigated over 50 fatality accidents and hundreds of traffic accidents
that involved serious bodily injury. Based on his experience, Officer Portillo stated a motor
vehicle could be considered a deadly weapon and it is capable of causing death or serious bodily
injury in the manner that it is used. During closing arguments, both the State prosecutors and
defense counsel stressed that the burden was on the State to prove all the elements of the offenses
beyond a reasonable doubt. We conclude Appellant has failed to show egregious harm resulted
from the complained-of charge error. Issue Two is overruled.
            We affirm the trial court’s judgment.
 
                                                                        DAVID WELLINGTON CHEW, Chief Justice

November 30, 2006

Before Chew, C.J., McClure, J., and Barajas, C.J. (Ret.)
Barajas, C.J. (Ret.), sitting by assignment, not participating

(Do Not Publish)