

# IN THE
# TENTH COURT OF APPEALS

### No. 10-15-00111-CR

**JUAN FRANCISCO SEGOVIA,**

                                                            **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                            **Appellee**

From the 54th District Court
McLennan County, Texas
Trial Court No. 2013-1209-C2

## MEMORANDUM  OPINION

The jury convicted Juan Francisco Segovia of the offense of murder and assessed

his punishment at 75 years confinement.  We affirm.

### Background Facts

There is no challenge to the sufficiency of the evidence.  On October 14, 2012,

Anthony Degrate and his cousin, Edmund Jones, were leaving a nightclub in a vehicle

driven by Jones.  They had an altercation in the parking lot with a person in a black Ford

Mustang and then a second altercation with that person at the parking lot exit. Jones testified that after leaving the parking lot, the driver of the black Mustang pulled up next to his vehicle while stopped at a red light. The driver of the black Mustang got out of his vehicle and approached the vehicle of Jones and Degrate. Jones identified the person in the black Mustang as Appellant. As Appellant approached their vehicle, Degrate opened his door and struck Appellant. Degrate got out of the vehicle and he and Appellant were "tussling." Jones testified that he walked around to the back of his vehicle, and Degrate was lying on the ground with blood on his shirt. Degrate suffered two stab wounds and later died from his injuries.

### In-Court Identification

In his first issue, Appellant argues that the trial court erred in failing to exclude Jones's in-court identification because it was tainted by an impermissibly suggestive pretrial photo lineup. We review de novo a trial court's ruling on how the suggestiveness of a pretrial photo array may have influenced an in-court identification. *Gamboa v. State*, 296 S.W.3d 574, 581 (Tex. Crim. App. 2009). A pretrial identification procedure may be so suggestive and conducive to mistaken identification that subsequent use of that identification at trial would deny the accused due process of law. *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *Barley v. State*, 906 S.W.2d 27, 32-33 (Tex.Crim.App.1995), *cert. denied*, 516 U.S. 1176, 116 S.Ct. 1271, 134 L.Ed.2d 217 (1996). An in-court identification is inadmissible when it has been tainted by an

impermissibly suggestive pretrial photographic identification. *Luna v. State*, 268 S.W.3d 594, 605 (Tex.Crim.App.2008).

To determine the admissibility of both pretrial identification and potentially tainted in-court identification, we ask, considering the totality of the circumstances, (1) whether the identification procedure was impermissibly suggestive and, if so, (2) whether the improperly suggestive procedure created a very substantial likelihood of irreparable misidentification. *Simmons v. United States*, 390 U.S. at 384, 88 S.Ct. at 971; *Barley v. State*, 906 S.W.2d at 33. The defendant must prove both elements by clear and convincing evidence. *Barley v. State*, 906 S.W.2d at 33-34. Only if we determine that the pretrial identification procedure is impermissibly suggestive do we examine whether it tainted the in-court identification. *Id*. at 34. Factors to be considered when making a de novo review are: 1) the witness's opportunity to view appellant at the time of the crime; 2) the witness's degree of attention; 3) the accuracy of the witness's prior description of the criminal; 4) the witness's level of certainty at the time of confrontation; and 5) the length of time between the offense and the confrontation. *Gamboa v. State*, 296 S.W.3d at 582.

In his motion to suppress the identification, Appellant argued that the photo lineup was impermissibly suggestive because his picture was different than the rest of the photos and his posture in the picture was different from the others. At a pretrial hearing, Appellant argued that the lineup was suggestive in that the others in the lineup

were not of the same size, weight, age, and physical characteristics as Appellant. During the trial, the trial court held a brief hearing on the motion outside the presence of the jury and denied Appellant's motion to suppress.

Jones described the assailant as being a Hispanic male in his 30's and kind of short. Another witness to the stabbing described the assailant as being a light skinned Hispanic male between 20 and 30 years-old who was tall and slender. Detective Kristina Woodruff with the Waco Police Department testified that she prepared a photo lineup of six men and showed the lineup to Jones and the other witness. Jones viewed the photo lineup in the back seat of the police car outside of his apartment because he was home with a sick child. Jones identified Appellant from the photo lineup as the assailant, but the other witness could not identify anyone from the photos as being the assailant.

Appellant argues on appeal that the photo lineup was suggestive in that his photo is distinctive and stands out from the others. He contends the posture of his head is different and that the photo is taken at a closer range than the others. He further argues that he is the only slender person portrayed in the photos, that he is significantly older than the others, and that two of the other persons in the photos have darker skin tones.

The record shows that all of the people in the photo lineup were Hispanic males with birthdates within three years of Appellant's birthdate. The men all had similar facial hair and hair length. The pictures are all headshots from the chest up and do not reflect height or weight. In his picture, Appellant's head is slightly turned; however, it is not a

remarkable difference from the other pictures. There is nothing to indicate that the posture of his head in the photo was suggestive. Considering the totality of the circumstances, we conclude the pretrial identification process conducted in this case was not impermissibly suggestive. We overrule the first issue.

## Expert Testimony

In his second issue, Appellant argues that the trial court erred in not allowing a defense expert witness to testify. Texas Rule of Evidence 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX.R.EVID. 702. Under Rule 702, it is the trial court's responsibility to determine whether proffered scientific evidence is sufficiently reliable and relevant to assist the jury. *Russeau v. State*, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005); *Jackson v. State*, 17 S.W.3d 664, 670 (Tex.Crim.App.2000). A trial court's ruling on the admissibility of scientific expert testimony is reviewed under an abuse of discretion standard. *Russeau v. State*, 171 S.W.3d at 881; *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex.Crim.App.2000).

The proponent of scientific evidence must demonstrate to the trial court, by clear and convincing evidence, that the scientific evidence is reliable. *Russeau v. State*, 171 S.W.3d at 881. The proponent of "hard" scientific evidence must satisfy three criteria to demonstrate reliability: (1) the underlying scientific theory is valid; (2) the technique

applying the theory is valid; and, (3) the technique was properly applied on the occasion in question. *Russeau v. State*, 171 S.W.3d at 881; *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992). Other non-exclusive factors that could affect a trial court's determination of reliability include: (1) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community, if such a community can be ascertained; (2) the qualifications of the expert testifying; (3) the existence of literature supporting or rejecting the underlying scientific theory and technique; (4) the potential rate of error of the technique; (5) the availability of other experts to test and evaluate the technique; (6) the clarity with which the underlying scientific theory and technique can be explained to the court; and (7) the experience and skill of the person who applied the technique on the occasion in question. *Russeau v. State*, 171 S.W.3d at 881-882; *Kelly v. State*, 824 S.W.2d at 573.

Appellant called Arthur Wah Young to testify outside the presence of the jury as an expert witness. Young is a forensic biology specialist and has testified in court as an expert in DNA comparisons. Young was called to testify on "the findings of the laboratory and specifically the absence of certain results and how results from a foreign contributor could have been obtained with a different approach to the examination of the evidence."

Young would testify about a technique known as "vacuum swabbing" and how that process could have obtained foreign DNA profiles from the victim's shirt. Young

described the process of "vacuum swabbing" and stated that his company, Guardian Forensic Services, is able to use the technique. Young did not know if the Texas Department of Public Safety Crime Laboratory has formally adopted the use of the technique. Young stated that he could not say that the DPS lab made any mistakes in testing or did anything wrong, rather his "opinion is that if she had tested other areas or had been provided samples that came from other areas, based on the case work information, that you might be able to get someone other than the victim who was the one who was wearing the shirt at the time." He testified that someone should have used the vacuum swabbing technique.

Young could not say whether any labs in Texas used by the public currently use the vacuum swabbing technique. Young said the technique was presented in an article in *The Journal of the International Association of Identification* "sometime in the early 2000s." Young did not know of any other publications or treatises proving the technique to be reliable. Young further did not know if the vacuum swabbing technique had ever been admitted in a Texas court as a qualified or reliable technique.

The trial court asked Young if the vacuum swabbing technique is accepted as valid by DNA scientists. Young responded:

> For the handful of DNA scientists that I know that have used it in the past, then yes. The answer is yes. But the problem becomes, number one, what is reliability when you're testing a technique that is attempting to get very low levels of DNA. There's no frame of reference which to compare it to. Number two, the number of articles that I'm aware of, just being the one,

was simply an introduction to me of how the technology worked or how the method worked.

Young further stated:

I don't know if I can say if it's been universally accepted because it's such a small handful that's using it. But I have not heard any disagreements from any scientist that it doesn't work, that it's not good. If anything, the one comment that I've heard is that it works a little bit too well. It picks up too much DNA.

The trial court excluded Young's testimony based upon issues with the reliability of the science.

Appellant did not meet his burden to show by clear and convincing evidence that the scientific evidence of vacuum swabbing is reliable. Moreover, Young was called to testify that the vacuum swabbing could have found DNA on the victim's shirt. However, Appellant never requested vacuum swabbing testing be conducted on the victim's shirt. The trial court did not abuse its discretion in excluding the testimony of Young. We overrule the second issue.

## Conclusion

We affirm the trial court's judgment.

AL SCOGGINS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed August 31, 2016
Do not publish
[CR PM]

