# Fourth Court of Appeals
## San Antonio, Texas


## MEMORANDUM OPINION

Nos. 04-21-00185-CR, 04-21-00186-CR

Adelida **TREVINO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 451st Judicial District Court, Kendall County, Texas
Trial Court Nos. 18-203-CR, 18-204-CR
Honorable Kirsten Cohoon, Judge Presiding

Opinion by:     Irene Rios, Justice

Sitting:        Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice
                Irene Rios, Justice

Delivered and Filed: October 31, 2022

AFFIRMED

Appellant Adelida Trevino appeals her convictions for driving while intoxicated and

possession of marihuana in an amount less than two ounces.  In her first issue, Trevino argues the

trial court should have excluded testimony from the State's expert because the testimony was not

relevant, and the witnesses were not qualified to testify as experts.[1]  Trevino also argues the

---

[1] Trevino filed two briefs—one for each cause number in this appeal.  In each brief, Trevino raises two different issues. We address all four issues in this opinion.  Trevino briefly makes a Fourth Amendment argument in one of her sufficiency issues.  However, to the extent Trevino incorporates additional complaints about other alleged errors in her issues, those issues are multifarious.  We are not required to address multifarious issues and we decline to address Trevino's additional complaints.  *See Jenkins v. State*, 493 S.W.3d 583, 605 n.50, 614 n.85 (Tex. Crim. App. 2016).

evidence is legally and factually insufficient: (1) to support her conviction for driving while intoxicated; (2) to support the jury's conclusion that she possessed a usable quantity of marihuana; and (3) to show she possessed marihuana that exceeded .03 percent of Delta 9 concentration.[2] We affirm.

## BACKGROUND

On April 5, 2017, Trevino was involved in a head-on collision with another vehicle when she was driving in the wrong lane of a two-way access road along Interstate-10 near Boerne, Texas. Texas State Trooper Steven Mayfield responded to the motor vehicle accident and discovered marihuana in Trevino's vehicle and on the ground next to the driver's side door where Trevino had exited her vehicle. Trooper Mayfield also discovered a device used for smoking marihuana in the back seat of Trevino's vehicle. After Trooper Mayfield observed Trevino exhibited signs of impairment, determined Trevino was driving on the wrong side of the road, and Trevino admitted to being around people who were smoking marihuana earlier that evening, Trooper Mayfield decided to conduct four field sobriety tests. Trevino failed three out of the four tests. Trooper Mayfield determined Trevino was impaired and placed her under arrest for driving while intoxicated.

Trooper Mayfield then transported Trevino to the hospital where a nurse drew Trevino's blood. Dan Rios, a lead forensic scientist in the toxicology section of the Texas Department of Public Safety crime lab, tested a specimen of Trevino's blood and identified .01 milligrams per liter of clonazepam in Trevino's blood. Sarah Martin, another forensic scientist in the toxicology

---

[2] The Texas Court of Criminal Appeals held there is no meaningful distinction between a legal sufficiency standard and factual sufficiency standard. Although Trevino argues the evidence is legally and factually insufficient to support her conviction, "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010).

section of the Texas Department of Public Safety crime lab, also tested a specimen of Trevino's blood and found "the active component of mari[h]uana, which is the Delta-9-THC at a concentration of 2.9 nanograms per milliliter." Martin also found "a concentration of 23 nanograms per milliliter" of "9-carboxy-THC," the inactive metabolite of marihuana.[3]

The State charged Trevino with driving while intoxicated and possession of marihuana in an amount less than two ounces. A jury convicted Trevino on both counts and the trial court sentenced Trevino to 180 days' confinement on each count to run concurrently.[4] The trial court suspended the sentence on both counts and placed her on community supervision for twenty-four months. Trevino appeals.

### SUFFICIENCY OF THE EVIDENCE

When examining the sufficiency of the evidence to support a criminal conviction, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Alfaro-Jimenez v. State*, 577 S.W.3d 240, 243–44 (Tex. Crim. App. 2019). Under this standard, "we defer to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) (internal quotation marks omitted). Our role "is restricted to guarding against the rare occurrence when the factfinder does not act rationally." *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018).

---

[3] Martin explained the inactive metabolite "[does] not produc[e] an effect on the individual."

[4] For the driving while intoxicated conviction, the trial court also assessed a fine, restitution, court costs, and fees that are not relevant to this appeal.

"It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt." *Id.* "Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction." *Id.* "Furthermore, the trier of fact may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs when drawing inferences from the evidence." *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014).

### A. Driving While Intoxicated

In her second issue, Trevino argues the evidence is insufficient to support her conviction for driving while intoxicated.

"A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE ANN. § 49.04(a). A person is intoxicated if: (A) they do not have "the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance in the body; or (B) [the person has] an alcohol concentration of 0.08 or more." *Id.* §49.01(2). A conviction for driving while intoxicated can be supported solely by circumstantial evidence. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010).

It is undisputed that Trevino was operating a motor vehicle in a public place. Trevino only challenges the sufficiency of the evidence showing she was intoxicated. The evidence at trial shows that Trevino caused an accident by driving the wrong way on a two-lane road. Trooper Mayfield responded to the scene of the accident and testified that he located marihuana in Trevino's vehicle. After observing Trevino—and making an initial determination that Trevino appeared impaired—Trooper Mayfield administered four field sobriety tests: (1) the horizontal gaze nystagmus test; (2) the walk and turn test; (3) the one-leg stand test; and (4) the alphabet test.

Although Trevino was able to say the alphabet without singing, she failed the other three field sobriety tests.

Trooper Mayfield testified that he observed "sustained nystagmus at maximum deviation" and "onset of nystagmus prior to 45 degrees." Trooper Mayfield, who is certified to administer the test, explained that these signs indicated Trevino was impaired at the scene of the accident. Regarding the walk and turn test, Trooper Mayfield stated Trevino "could not balance during the instructions" for the test, she had "to reposition herself several times," and "she stopped while walking, she missed heel to toe, and she took a wrong number of steps." Trooper Mayfield further testified that Trevino could not complete the test and had to stop "after a couple of steps."

When asked whether Trevino completed the one-leg stand test, Trooper Mayfield testified Trevino "put her foot down before she was told to" and "she swayed" during the test. Trooper Mayfield stated he "believe[d] that [Trevino] was impaired" citing "her driving . . . that caused the head-on [collision], her demeanor, the slurred speech, the red bloodshot eyes, her performance on her standardized field sobriety tests, and [her admission] she had been around people that smoked mari[h]uana." Consequently, Trooper Mayfield opined that—based on his experience and training—"Trevino had lost the normal use of her mental and physical faculties by the use of alcohol, drug, dangerous drug, or other substance in her body." Video from Trooper Mayfield's dashcam was introduced into evidence and published to the jury. The video showed Trevino's demeanor before and after she was arrested as well as her performance on the field sobriety tests.

After she was placed under arrest, Trevino consented to provide a blood sample for testing and analysis. Dan Rios, a lead forensic scientist in the toxicology section at the Texas Department of Public Safety crime lab, testified he identified "clonazepam at [a concentration of] 0.01 milligrams per liter" in Trevino's blood analysis. Although Rios testified he "cannot say that an individual is definitely impaired or intoxicated at [a particular] concentration," he explained that

clonazepam is a central nervous system depressant drug ("CNS depressant drug") and he is able to testify to the general effects these types of drugs can have on an individual. According to Rios, an individual taking a CNS depressant drug "may exhibit signs and symptoms such as slurred speech, difficulty with balance, difficulty thinking, difficulty focusing, having trouble performing divided-attention tasks[—]such as driving a car[—]" and increases an individual's reaction time.

Sarah Martin, another forensic scientist with the Texas Department of Public Safety crime lab, testified she "found both the active component of mari[h]uana, which is the Delta-9-THC at a concentration of 2.9 nanograms per milliliter, as well as the metabolite, which is the 9-carboxy-THC at a concentration of 23 nanograms per milliliter." Martin further explained the Delta-9-THC active component of marihuana produces an effect on the individual while the 9-carboxy-THC metabolite is an inactive component that is not producing an effect on the individual.

Martin echoed Rios's testimony that she was not able to testify that a specific concentration of Delta-9-THC affects a specific person a certain way. She testified:

> There's no per se level for [impairment from] drugs . . . Mari[h]uana is a drug where it's very personal dependent. Some people [may be] impaired at low concentrations, some people may be impaired at high concentrations. It differs on how experienced you are with a drug and the timeline of use when you last used it.

However, generally, Martin stated Delta-9-THC has "central nervous system depressant effects, which means it can cause drowsiness, dizziness, relaxation[,]" "confusion or disorientation," as well as "some swaying or stumbling behavior when trying to walk or move, and an issue while driving including [issues with] judgment or reaction rate or depth perception." Martin testified: "Regarding effects [of Delta-9-THC in your body] while driving, you could have a hard time maintaining your lane or be weaving in traffic [and you may also] have a delayed reaction . . . where you come to a stop later than you intend to."

Martin further testified:

Because mari[h]uana has depressant effects and clonazepam is a central nervous system depressant, they can produce what's called an additive effect. So that means that the total CNS depressant effect from both of these together is going to be greater and possibly more impairing than just one by itself. The side effects will stack up and add together.

The State introduced the toxicology report supporting Rios's and Martin's testimony.

Dr. Lance Platt, a former "drug recognition expert coordinator for the State of Texas," testified for the defense. Dr. Platt opined that the field sobriety tests were designed to detect impairment from alcohol, not drugs. Dr. Platt further opined the impact from the vehicular accident could have caused the disorientation described by Trooper Mayfield and depicted by the dash cam footage. Finally, although Dr. Platt admitted there is not a determinative concentration of clonazepam or marihuana that can cause impairment in a specific individual, he contradicted that testimony and stated that the concentration of clonazepam and marihuana in Trevino's blood is too low to cause impairment.

Here, a rational juror could have reasonably concluded that Trevino did not have the normal use of mental or physical faculties by reason of the introduction of clonazepam and marihuana into her body while operating a vehicle in a public place. The jury's role was to resolve conflicts in the testimony, and we must presume the jury resolved any conflict in favor of the prosecution. *See Isassi*, 330 S.W.3d at 638; *see also Jackson v. Virginia*, 443 U.S. 307, 326 (1979). The jury was free to disbelieve Dr. Platt's explanation for Trevino's behavior and—based on the testimony of Trooper Mayfield, Rios, and Martin—could have reasonably concluded that the levels of clonazepam and marihuana in Trevino's body caused her to be intoxicated while driving. Viewing the evidence in the light most favorable to the verdict and deferring to the jury's assessment of credibility, we hold the evidence was legally sufficient to support Trevino's conviction for driving while intoxicated. *Alfaro-Jimenez*, 577 S.W.3d at 243–44.

Accordingly, Trevino's second issue is overruled.

## B. *Usable Quantity of Marihuana*

In her third issue, Trevino argues the evidence is insufficient to show the quantity of marihuana in Trevino's possession was a usable amount.

"[A] person commits an offense if the person knowingly or intentionally possesses a usable quantity of marihuana." TEX. HEALTH & SAFETY CODE ANN. § 481.121(a). The offense is "a Class B misdemeanor if the amount of marihuana possessed is two ounces or less." *Id.* § 481.121(b)(1). "What is a 'usable quantity' is not statutorily defined, but the Texas Court of Criminal Appeals has stated that for mari[h]uana to be a 'usable amount,' there must be 'an amount sufficient to be applied to the use commonly made thereof.'" *Smith v. State*, 620 S.W.3d 445, 455 (Tex. App.—Dallas 2020, no pet.) (quoting *Moore v. State*, 562 S.W.2d 226, 228 (Tex. Crim. App. 1977). An officer's testimony, based on his or her training and experience, is sufficient to identify a substance as marihuana. *See Smith*, 620 S.W.3d at 455. Likewise, whether a particular amount is a usable quantity can be proven by circumstantial evidence and inferences drawn from evidence showing the amount of marihuana possessed. *State v. Perez*, 947 S.W.2d 268, 271 n.6 (Tex. Crim. App. 1997); *Smith*, 620 S.W.3d at 455.

Here, Trooper Mayfield testified that he found marihuana on the floorboard of Trevino's vehicle and in a cigar package laying on the ground next to Trevino's driver side door. Trooper Mayfield stated the cigar package containing the marihuana "was fresh" and stated it had not been on the ground long, indicating it had fallen out of Trevino's car after the motor vehicle accident. Trooper Mayfield also testified he found a device used for smoking marihuana—containing marihuana residue—in Trevino's vehicle. The trial court admitted into evidence photos showing the marihuana on the floorboard, the marihuana in the cigar package, and the device used for smoking marihuana. Although Trooper Mayfield did not directly testify the amount of marihuana in Trevino's possession was a usable quantity, a rational juror could have reasonably inferred the

amount of marihuana was a usable quantity based on the photos of the marihuana that were admitted into evidence. *See Perez*, 947 S.W.2d at 271 n.6. Accordingly, the evidence is sufficient to support Trevino's conviction for possession of marihuana.

Trevino's third issue is overruled.

### C. *0.3 Percent of Delta 9 Concentration*

In her fourth issue, Trevino argues the State failed to prove she possessed marihuana as that term is now defined by statute, i.e., as having a THC (tetrahydrocannabinol) concentration of more than 0.3%. This issue apparently stems from the legislature's passage of H.B. 1325, which excludes hemp from the definition of marihuana. *See* Act of May 22, 2019, 86th Leg., R.S., ch. 764, 2019 Tex. Gen Laws 2084–85, 2099–2100 (codified at TEX. HEALTH & SAFETY CODE ANN. § 481.002). H.B. 1325 defined hemp as "Cannabis sativa L. and any part of that plant . . . with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." *See id.* at 2084–85 (codified at TEX. AGRIC. CODE ANN. § 121.001). H.B. 1325 passed while Trevino's case was pending, taking effect on June 10, 2019. *Smith*, 620 S.W.3d at 448.

However, we agree with our sister courts that "the changes enacted by the [l]egislature in H.B. 1325 apply prospectively to offenses committed after the date it took effect, June 10, 2019 . . . ." *Id.* at 453; *see also Flanagan v. State*, No. 12-21-00177-CR, 2022 WL 2374394, at *2 n.2 (Tex. App.—Tyler June 30, 2022, no pet.) (mem. op., not designated for publication); *Sanchez v. State*, No. 07-19-00337-CR, 2021 WL 2673061, at *2 (Tex. App.—Amarillo June 29, 2021, pet. ref'd) (mem. op., not designated for publication); *Arellano v. State*, No. 08-19-00240-CR, 2021 WL 2678482, at *4–5 (Tex. App.—El Paso June 30, 2021, no pet.) (mem. op., not designated for publication); *Childress v. State*, No. 06-19-00125-CR, 2020 WL 697903, at *3 n.6 (Tex. App.—Texarkana Feb. 12, 2020, no pet.) (mem. op., not designated for publication). Here,

Trevino was arrested on April 5, 2017. Because the amended definition of marihuana codified by H.B.1325 does not apply in this case, Trevino's fourth issue is without merit and overruled.

### ADMISSIBILITY OF TESTIMONY

In her first issue, Trevino argues that Dan Rios's and Sarah Martin's testimony should have been excluded because their testimony is not relevant, and they did not qualify to testify as experts. Trevino's argument seems to be premised on the notion that, because Rios and Martin could not definitively testify that the amount of clonazepam and Delta-9-THC found in Trevino's blood caused impairment, their expertise served no purpose in aiding the jury. Trevino also contends that the State had to produce direct evidence that Trevino was impaired and—because Rios and Martin were unable to definitively testify that Trevino was impaired—their testimony is not relevant. We disagree.

We review a trial court's ruling on the admission of evidence for an abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). The trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Id.*

#### A. Relevance

Generally, all relevant evidence is admissible. TEX. R. EVID. 402. Relevant evidence is that which has any tendency to make the existence of any consequential fact more or less probable than it would be without the evidence. *Id.* 401(a). In determining relevance, courts must examine the purpose for which particular evidence is being introduced. *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009). "It is critical that there is a direct or logical connection between the actual evidence and the proposition sought to be proved." *Id.*

The State had the burden to prove Trevino operated a motor vehicle while being intoxicated. The jury was instructed that "intoxicated" means "not having the normal use of mental

or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body . . . ." To be relevant, the evidence needed to influence the jury's determination of whether Trevino had lost her mental or physical faculties by reason of the introduction of drugs into her body. Rios and Martin testified they each found a different drug in Trevino's body and that those drugs depressed the central nervous system and could cause impairment. The testimony tends to support the State's theory that Trevino was intoxicated by the introduction of drugs into her body. Therefore, we hold Rios's and Martin's testimony was relevant, and the trial court did not abuse its discretion when it overruled Trevino's relevancy objection.

### B. Expert Testimony

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. "Before admitting expert testimony, a trial court must determine that (1) the witness qualifies as an expert by reason of his [or her] knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case." *Ashby v. State*, 527 S.W.3d 356, 362 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (citing *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006)). "Thus, the trial court must determine that the expert is qualified to testify and the proffered testimony is reliable and relevant." *Ashby*, 527 S.W.3d at 362 (citing *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006)).

### 1. Qualifications

Here, Rios testified he is a lead forensic scientist in the toxicology section at the Texas Department of Public Safety crime lab. He has a bachelor of science degree in chemistry and testified that he has extensive training in toxicology to identify drugs in blood samples. Rios stated he has attended the Borkenstein drug course, "a week-long course on studying the pharmacology of drugs and the effects of these drugs on psychomotor skills, psychomotor performance and driving." Rios is a member of the Southwestern Association of Toxicologists and participates in annual continuing education conferences where, among other things, he learns about the effects certain drugs may have on the human body. Rios testified he is licensed by the Texas Forensic Science Commission as a forensic analyst in the field of toxicology and is certified to test for benzodiazepines such as clonazepam. Finally, Rios stated he has worked as a forensic scientist with the Texas Department of Public Safety for 21 years and has testified as an expert "approximately 150 to 200 times."

Martin testified she has been a forensic scientist with the Texas Department of Public Safety crime lab since 2012. She has a bachelor of science degree in forensic chemistry and a master of science degree in forensic science. Martin testified she has gone through extensive on-the-job training analyzing blood samples and passed a competency test before she began working in the lab. Martin testified she is trained to test the majority of substances the crime lab tests. Martin stated she attends annual continuing education and is a member and officer of the Southwestern Association of Toxicologists as well as a member of the Society of Forensic Toxicologists. She is a co-author of four published, peer-reviewed scientific articles in toxicology and has testified as an expert approximately 180 times.

Based on this testimony, the trial court could have reasonably concluded Rios and Martin qualified as experts in toxicology.

*2. Reliability*

"The Court of Criminal Appeals set forth the test for assessing the reliability of expert testimony concerning 'hard sciences' in *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992)." *Ashby*, 527 S.W.3d at 362. "To be considered reliable under *Kelly*, evidence derived from a scientific theory must satisfy three criteria: (a) the underlying scientific theory must be valid; (b) the technique applying the theory must be valid; (c) and the technique must have been properly applied on the occasion in question." *Ashby*, 527 S.W.3d at 362–63 (citing *Kelly*, 824 S.W.2d at 573). In assessing reliability, the trial court may look to the following non-exhaustive list of factors: "(1) the extent to which the theory and procedure are accepted as valid by the relevant scientific community; (2) the technique's potential rate of error; (3) the availability of experts to test and assess the method or technique; (4) the clarity and precision with which the underlying scientific premise and approach can be explained to the court; and (5) the knowledge and experience of the person(s) who applied the methodology on the occasion in question." *Layton*, 280 S.W.3d at 241.

Rios and Martin testified they conducted their tests on the blood samples in the State's toxicology lab, which was accredited by the American Society of Crime Laboratory Directors Laboratory Accreditation Board. They each explained the processes they followed to test the blood specimens and the tests were conducted with several controls to ensure the results are accurate. Martin testified there are "many checks that we have within the system that would be able to determine whether we [followed] the procedure correctly" and "to make certain that we are reporting the correct drug in the correct concentration." Rios and Martin both testified that their work is peer reviewed to ensure the test was conducted properly and the results are accurate.

Based on this testimony, the trial court could have reasonably concluded the underlying scientific theory to test the blood was valid, Rios's and Martin's techniques applying the theory were valid, and the technique was properly applied on the occasion in question.

*3. Relevance*

As mentioned above, Rios's and Martin's testimony was relevant. Rios and Martin testified to the concentration of drugs in Trevino's blood on the night of the accident. They also testified that, based on their continuing education and training, those drugs can impair or depress an individual's central nervous system. Trevino argues their testimony should have been excluded because they were unable to testify that the specific concentration of drugs in Trevino's blood caused her to be intoxicated.[5] However, it was the jury's role to make that determination based on the circumstantial evidence presented by the State. *See Kuciemba*, 310 S.W.3d at 462 (holding a conviction for driving while intoxicated can be supported by circumstantial evidence).

Trevino's first issue is overruled.

## CONCLUSION

The trial court's judgments are affirmed.

Irene Rios, Justice

Do not publish

---

[5] In fact, Rios and Martin conceded they cannot testify a certain concentration of a certain drug will cause impairment in a particular person because the effects of drugs are specific to and dependent on the person taking the particular drug.